# EXHIBIT A

June 3, 2019

Edward Woods, M.D.
4112 Withe Avenue
Richmond, VA 23221

Re: <u>Per-Diem Agreement</u>

Dear Dr. Woods:

On behalf of the entity identified on <u>Appendix 1</u> ("Employer"), we are pleased to offer you (hereinafter referred to as the "Physician") a position as a per diem physician at the location selected below (the "Assigned Hospital") or other such location(s) as Employer may direct from time to time (each an "Assigned Hospital"):

☒ Steward Trumbull Memorial Hospital, Inc.
☒ Steward Sharon Regional Health System, Inc.

The terms of your per diem employment (this "Agreement") are as follows:

1. You will be responsible for variable (per diem) hours in the Cardiothoracic Surgery Department at the Assigned Hospital.

2. You will report to the Chief of Cardiothoracic Surgery at the Assigned Hospital for clinical matters and administrative matters.

3. You agree to provide direct patient clinical care ("Services"), participate in quality assurance measures and participate in staff meetings, as may be required by Employer or the Assigned Hospital from time to time.

4. You will be paid as follows:

    - $2,100 per day for call coverage.

5. As a per diem employee, you are not eligible for employee benefits.

6. The timing and length of each shift will be determined by the Assigned Hospital's policies in effect at the time Services are performed and made known to Physician.

7. Physician and Assigned Hospital shall agree on a mutually agreeable schedule from time to time.

8. The effective date of this Agreement is September 26, 2019 (the "Effective Date"). Unless sooner terminated, this Agreement shall remain in full force and effect for one (1) year and will automatically renew for successive one (1) year periods.

9. This Agreement may be terminated, with or without cause, upon thirty (30) days written notice by either party.

10. All billing for Services will be performed by Employer. You agree to irrevocably assign your right to bill for Services to Employer.

11. The medical records of all patients seen by you will be and remain the property of Employer.

12. Employer will provide space, equipment, and personnel to you in order to perform the Services.

13. The remaining terms governing this Agreement are set forth in <u>Exhibit A</u>.

In order to keep the planning process on track, kindly sign and return two original copies of this Agreement and all required licenses, registrations and payor enrollment materials to Christine Kady, Physician Services, 9 Galen Street, Suite 240, Watertown, MA 02472 by June 13, 2019. Your Effective Date may be postponed if you are not credentialed by Employer's payors and by the Assigned Hospital as of the Effective Date.

**[Signature Page Follows]**

**IN WITNESS WHEREOF**, the Parties have caused this Agreement to be effective as of the Effective Date.

**EMPLOYER**

By:_____
Name: Michael Callum, M.D.
Title: President

**PHYSICIAN**

*Edward J. Woods M.D.*
Edward Woods, M.D.

## APPENDIX 1 – STEWARD MEDICAL GROUP, INC.

**Employer:** Steward Medical Group, Inc., a Massachusetts non-profit corporation that is qualified to do business in the State.

**Notice Address:**

| | |
|---|---|
| If to Employer: | Steward Medical Group, Inc.<br>1900 N. Pearl Street, Suite 2400<br>Dallas, Texas 75201<br>Attention: Chief Operating Officer |
| With a Copy to: | Steward Health Care System LLC<br>1900 N. Pearl Street, Suite 2400<br>Dallas, Texas 75201<br>Attention: General Counsel<br><br>Steward Medical Group, Inc.<br>9 Galen Street<br>Watertown, MA 02472<br>Attention: President |

DM_US 92368523-6.087956.0051

## APPENDIX 2 – OHIO & PENNSYLVANIA

**Jurisdiction:** State of Ohio, provided that Employer is also qualified to do business in the Commonwealth of Pennsylvania for purposes of the first paragraph of the Agreement and Appendix 1.

**Professional Liability Insurance:**

- **Limits:** $1,000,000 per incident and $3,000,000 in the aggregate.

- Employer shall maintain professional malpractice insurance coverage for you during the term of this Agreement with limits set forth above, or such higher limits as Employer may from time to time provide for all employed physicians. If professional malpractice insurance coverage is provided on a claims made basis, Employer shall provide tail coverage for the period of time during which Physician was employed by Employer. Physician understands and agrees that the professional malpractice insurance covers the Physician only for actions taken within the course and scope of activities pursuant to this Agreement.

DM_US 92368523-6.087956.0051

# EXHIBIT A

# AGREEMENT TERMS

1. **RESPONSIBILITIES OF THE PHYSICIAN:**

    1.1. Qualifications. To be qualified to render Services under this Agreement, Physician at all times during the course of this Agreement shall: (i) possess a valid, unrestricted, and unlimited license to practice medicine in the jurisdiction identified on Appendix 2; (ii) apply for, be awarded, and maintain membership in good standing on the Assigned Hospital's Medical Staff with appropriate clinical privileges; (iii) be board certified or board eligible in Physician's specialty; (iv) possess a valid federal narcotics number and appropriate state registration for controlled substances; (v) be, and remain, a participating provider in the Medicare and Medicaid programs (Titles XVIII and XIX of the Social Security Act, respectively); (vi) provide free care in accordance with the policies and procedures of Employer and the Assigned Hospital; (vii) be or agree to be, and remain a participating physician in any insurance coverage accepted by Employer, including contractual relationships with preferred provider organizations, managed care programs, and health maintenance organizations; (viii) obtain and maintain professional liability insurance coverage in accordance with the requirements of this Agreement; and (ix) be a United States citizen or resident alien, or issued a visa by the United States Immigration and Naturalization Service that authorizes Physician to provide services hereunder.

    1.2. Services. The provision of Services by the Physician hereunder shall be at all times subject to (i) the policies and procedures and bylaws of Employer and the Assigned Hospital, (ii) the relevant bylaws and rules and regulations of the Medical Staff of the Assigned Hospital and (iii) applicable Assigned Hospital departmental policies, rules and regulations, as each may be amended from time to time. Services shall at all times be rendered in a competent and professional manner free from unprofessional, unethical or fraudulent conduct as determined by Employer (including without limitation, any form of harassment of any individual(s)), consistent with quality assurance standards of Employer and the Assigned Hospital and its Medical Staff and in compliance with all applicable statutes, regulations, rules and directives of federal, state and other governmental and regulatory bodies having jurisdiction over Physician, Employer, or the Assigned Hospital, applicable standards of the Joint Commission, the Physician's board certifying organization(s) and currently accepted and approved methods and practices applicable to the practice of the Physician.

    1.3. Non-exclusivity. Physician may fulfill other professional, clinical and teaching obligations when not providing services for Employer pursuant to this Agreement. Physician hereby certifies that he or she is not bound by any agreement or arrangements which would preclude, prohibit or restrict him or her from entering into, or from fully performing the services required under this Agreement or subject the Employer or any of its affiliates to any risk of legal action from any third party.

    1.4. Professional Liability Insurance. See Appendix 2.

    1.5. Professional Billing. The Physician irrevocably assigns and grants to Employer the right to bill and collect from patients and third party payors for all Services rendered by the Physician hereunder. The Physician shall complete and submit any and all information required by

-3-

Employer to bill for, or justify, the Services.

1.6. Time Records. Physician shall maintain time records in the form requested by Employer and shall submit them to Employer as required by Employer from time to time pursuant to this Agreement.

1.7. Electronic Medical Record and Electronic Prescribing. Employer has adopted electronic medical record and electronic prescribing systems. Such systems will be installed in every Employer practice location. Physician shall use such electronic medical record and electronic prescribing systems to the full extent of their capacity.

1.8. HIPAA. The Physician shall at all times abide by and adhere to all policies and procedures promulgated and adopted by Employer and the Assigned Hospital with respect to the protection of individually identifiable health information or any requirements as may be applicable to the Physician in accordance with the Health Insurance Portability and Accountability Act of 1996, as amended (HIPAA) or the regulations promulgated relative thereto.

1.9. Background Check. The Physician agrees to consent to Employer performing any and all background checks on the Physician as reasonably requested by Employer, including but not limited to a criminal background check, and to reasonably cooperate with Employer in obtaining said background checks. Physician will not be eligible to provide services pursuant to this Agreement until such time that Employer has obtained and reviewed the background checks.

1.10. Employee Health Requirements. The Physician shall comply with the health status requirements set forth by Employer from time to time, including all reasonably required vaccinations.

1.11. Corporate Compliance. The Physician agrees that Steward Health Care System LLC ("Steward Health Care" or "Steward") has adopted a Code of Conduct and Employer and the Assigned Hospitals have each adopted and implemented a corporate compliance program designed to promote the prevention, detection and resolution of conduct that does not conform to federal and state statutory and regulatory requirements and the requirements of third party payor programs, as well as their own ethical and business policies. The Physician represents and covenants that s/he will: (a) comply with all applicable federal and state statutes and regulations, third party payor requirements, the Steward Code of Conduct and Employer's and the Assigned Hospital(s)' commitment to conduct their business in compliance with their respective ethical standards and business policies; and (b) report to Employer and the respective Assigned Hospital in writing any known or suspected violations of any statutory or regulatory provision, third party payor requirements, the Steward Code of Conduct, or Employer's or the respective Assigned Hospital's ethical standards and business policies. Employer will provide the Steward Code of Conduct to the Physician. Contemporaneously with execution of this Agreement, Physician is required to sign the attestation attached hereto as Exhibit B.

1.12. Steward Policies. Physician shall at all times be subject to and comply with all Steward policies applicable to physicians.

2. Intentionally Omitted

3. **TERMINATION:**

-4-

3.1. Employer may immediately terminate this Agreement upon the occurrence of: Physician's failure to maintain the qualifications described in Section 1; or Physician's breach of any provision of the Agreement. In addition, in the event that Physician does not provide any Services hereunder for a period of at least six (6) months, Employer may terminate this Agreement immediately upon written notice to Physician.

4. **EFFECT OF TERMINATION**:

    4.1. Upon termination of this Agreement, whether by mutual agreement or otherwise, as herein above provided, neither Party shall have any further obligation hereunder except for (i) obligations accruing prior to the date of termination and (ii) obligations, promises, or covenants contained herein which are expressly made to extend beyond the term of this Agreement.

    4.2. Upon termination of this Agreement, Physician shall immediately deliver to Employer any medical records, equipment, or supplies in the possession of the Physician, including any keys, access cards, or identification cards, and shall cease accessing Employer's data management system.

    4.3. Immediately upon the termination of this Agreement, the Physician will resign from the medical staff of each Assigned Hospital. The Physician irrevocably appoints the Employer's President as the Physician's attorneys-in-fact to submit such resignation on the Physician's behalf if the Physician fails to do so within seventy-two (72) hours after such termination. The Physician hereby holds Employer harmless and releases it, its designees, and each Assigned Hospital and their respective boards of trustees and officers, from any liability therefor. The Physician agrees that the resignation of medical staff privileges shall not be subject to any review, hearing or other due process rights under the Medical Staff Bylaws or other governing policies of any Assigned Hospital or by any court or otherwise, which review, hearing and rights (if any) the Physician hereby specifically waives. The Physician has the right to reapply for privileges in accordance with the Medical Staff Bylaws of the Assigned Hospital(s). Notwithstanding the foregoing, Employer, in its sole discretion, shall have the right to determine whether it is in an Assigned Hospital's best interest to permit the Physician to remain a member of the medical staff of the Assigned Hospital following termination or expiration of this Agreement and, to that end, waive its right to enforce this Section without affecting its rights under any other provision of this Agreement.

5. **MISCELLANEOUS**:

    5.1. <u>Access of the Government to Records</u>. To the extent that the provisions of Section 1861(v)(1)(I) of the Social Security Act [42 U.S.C. §1395x(v)(I)] are applicable to this Agreement, the parties agree to comply therewith.

    5.2. <u>Confidentiality</u>. All records, files, reports and documents pertaining to services rendered by Physician hereunder, or to the operations of Employer, including any list of Employer patients and patient demographic information, belong to and shall remain the property of Employer. Physician recognizes and acknowledges that the terms of this Agreement, as well as Employer's proprietary information and trade secrets as they may exist from time to time, are confidential, valuable, special, and unique assets of Employer's business. Physician also recognizes and

-5-

acknowledges that the systems, protocols, policies, procedures, manuals, reports, data bases, documents, instruments and other materials used by Employer are proprietary to Employer, and are valuable, special and unique assets of Employer's business. Physician shall not, during or after the term of Physician's engagement hereunder, disclose Employer's proprietary information or trade secrets, or the terms and conditions of this Agreement, to any other person, or entity for any reason or purpose whatsoever, without the prior written consent of Employer.

5.3. Governing Law. This Agreement has been executed and delivered in, and shall be construed and enforced in accordance with, the laws of the jurisdiction identified on Appendix 2.

5.4. Notice. Any and all notices required to be given hereunder shall be sent registered or certified mail, postage prepaid, return receipt requested to the address provided below, which may be changed by submitting written notice from time to time.

   If to Employer:    See Appendix 1.

   If to Physician:   To the address listed on the cover page of this Agreement.

5.5. Entire Agreement. This Agreement supersedes all previous contracts or agreements between the Parties with respect to the subject matter hereof, and constitutes the entire Agreement between the Parties.

5.6. Amendments. Only an instrument in writing signed by both Parties may amend or modify this Agreement.

5.7. Successors. In the event that Employer merges, or is consolidated into, any other entity(s) or in the event that Employer sells or transfers substantially all of its assets to another entity, the terms of this Agreement shall inure to the benefit, and be assumed by, the entity resulting from such merger or consolidation or to which Employer's assets shall be sold and transferred.

5.8. No Referrals. No benefits or payments received by either Party under this Agreement shall be conditioned on or vary based upon the volume or value of referrals or business otherwise generated directly or indirectly to any other Party, or upon any requirement that any Party make or influence referrals or otherwise generate business for the other. The amounts paid hereunder have been determined by the Parties, after good faith and arms-length negotiation, to be fair market value compensation for the value of services rendered. No amount paid hereunder is intended to be, nor shall it be construed to be, an inducement or payment for the referral of patients by any Party to the other Party. In addition, the amounts charged hereunder do not include any discount, rebate, kickback or reduction in charge and are not intended to be, nor shall they be construed to be, an inducement or payment for referral of patients to any Party to this Agreement. Lastly, the Parties warrant and represent that no remuneration has been given to retain or maintain existing referrals or business.

5.9. Non-Solicitation. Physician hereby agrees that Physician will not, directly or indirectly, during the term of this Agreement and for a period of one (1) year after the termination of this Agreement: (a) initiate an offer to employ, solicit for employment, or employ any person employed by or engaged by Employer; or (b) initiate contact with or solicit, verbally or in writing, the business or care of any patient of Employer or its affiliates, or of any physician who is an

-6-

employee of Employer; provided, however, any such patient shall retain the right to choose Physician as his or her physician after the Physician's Agreement with Employer terminates.

5.10. <u>Assignment</u>. Employer may assign this Agreement without the consent of Physician to any entity affiliated with Steward or to such other organizations as Employer may determine. The Services called for under this Agreement are personal to Physician. Accordingly, Physician may not assign this Agreement without the prior written consent of Employer.

5.11. <u>Severability</u>. If any provision of this Agreement shall be declared invalid or illegal for any reason whatsoever, then notwithstanding such invalidity or illegality, the remaining terms and provisions of this Agreement shall remain in full force and effect in the same manner as if the invalid or illegal provision had not been contained herein.



# Steward Health Care System

## WORKFORCE CERTIFICATION

I hereby acknowledge that I have read and understand the information set forth in the Steward Code of Conduct. I certify that I will comply with these standards in my daily work activities and that I have a responsibility to report any suspected violations of the Code.

I understand adhering to these standards is a condition of employment or business relationship with Steward and that if I have any questions about the Code I must ask my manager for clarification and/or call the Office of Corporate Compliance & Privacy (OCCP).

I certify that I will report to my manager and/or the OCCP any instances where I did not or was unable to comply with the standards set forth in the Code.

Print Name: _Edward L. Woods MD_

Signature and Date: _Edward L. Woods MD._

**Instructions to HR: File in Employee Personnel File**