IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **EDWARD L. WOODS, M.D.** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 2:21cv1319 |
| | ) | **Electronic Filing** |
| **SHARON REGIONAL MEDICAL** | ) | |
| **CENTER, SHARON CLINIC** | ) | |
| **COMPANY, LLC, STEWARD SHARON** | ) | |
| **REGIONAL HEALTH SYSTEM, INC.** | ) | |
| doing business as SHARON REGIONAL | ) | |
| MEDICAL CENTER, **STEWARD** | ) | |
| **MEDICAL GROUP, INC.,** and | ) | |
| **STEWARD HEALTH CARE SYSTEM** | ) | |
| **LLC,** | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION**

July 26, 2022

**I.**     **INTRODUCTION**

Plaintiff, Edward L. Woods, M.D. ("Plaintiff" or "Dr. Woods"), filed a Complaint alleging Unlawful Retaliation for Whistleblowing in Violation of Public Policy in the Commonwealth of Pennsylvania at Count 1, Retaliation in Violation of Pennsylvania Whistleblower Law, 43 P.S. § 1421 *et seq.* at Count 2, and Intentional Infliction of Emotional Distress at Count 3 against Defendants, Sharon Regional Medical Center ("SRMC"), Steward Sharon Regional Health System, Inc. d/b/a SRMC, Steward Medical Group, Inc. ("SMG") and Steward Health Care System LLC (Steward) (collectively "Defendants"). Defendants have filed a Motion to Dismiss, Plaintiff has responded[1] and the motion is now before the Court.

---

[1]     In his Response, Dr. Woods consents to the dismissal of Count 2 (Retaliation in Violation of Pennsylvania Whistleblower Act).

## II. STATEMENT OF THE CASE

Dr. Woods started working as a cardiothoracic surgeon at SRMC in July 2014 as a *locum tenens* physician. Complaint ("Compl.") ¶¶ 30 & 31. Dr. Woods was offered a full-time position at SRMC in the Fall of 2015, and began working as a full-time cardiothoracic surgeon at SRMC on or about April 10, 2016. Compl. ¶¶ 33 & 34. In or around May 2018, Defendants hired Ann R. Connor, M.D. ("Dr. Connor") as another cardiothoracic surgeon at SRMC. Compl. ¶ 39. In the Fall of 2018, Dr. Connor was named the Chief of Cardiothoracic Surgery at SRMC. Compl. ¶ 42.

Dr. Woods alleges that Dr. Connor made serious medical mistakes during her time at SRMC which contributed the deaths of several patients. Compl. ¶ 49. In the Fall of 2018, several nurses told Dr. Woods of Dr. Connor's poor surgical techniques, and her flawed care and treatment of patients. Compl. ¶ 52. On or about December 7, 2018, Dr. Woods reported Dr. Connor's performance deficiencies to Dr. Roger Mitty ("Dr. Mitty"), Senior Vice President of SRMC. Compl. ¶ 81. Dr. Mitty informed Dr. Woods that Duke University had been retained by Defendants to perform an independent review of Dr. Connor's past surgeries and surgical techniques (the "Duke Report"). Compl. ¶ 82.

Continuing through February 2019, complaints regarding Dr. Connor's conduct by the staff of SRMC continued. Compl. ¶¶ 54, 56-57, 64, 68, 75-76. Dr. Woods alleges that he personally informed Defendants' administration and/or management of these and his own criticisms. Compl. ¶¶ 53, 58-61, 66-67, 69, 78, 81. Several Surgeons at SRMC, including Chief of Surgery Dr. Ambrosino and CMO Dr. Morgenstern, believed Dr. Connor should not be performing cardiac surgeries. Compl. ¶¶ 75 & 76.

2

SRMC received the final Duke Report on or about March 11, 2019. Compl. ¶ 85. On or about March 13, 2019, SRMC's administration met to discuss the Duke Report, and based upon the findings in the Report, decided to terminate Dr. Connor's employment effective on March 18, 2019. Compl. ¶ 86. On or about March 14, 2019, Dr. Connor performed surgery on a patient which resulted in an adverse outcome. Compl. ¶¶ 89 & 92. On or about March 18, 2019, Dr. Connor's employment was terminated. Compl. ¶ 89.

On March 26, 2019, Dr. Woods sent a detailed email to Dr. Mitty regarding Dr. Connor's March 14th surgery, reminded Dr. Mitty about the problems with Dr. Connor's technique identified in the Duke Report, stated that Steward "should not avoid its 'responsibility to the patients, Community or staff,'" and stated that there would be a class action lawsuit if patients learned about Dr. Connor's surgical technique. Compl. ¶¶ 92-94. On April 3, 2019, Dr. Woods sent a separate email to SRMC President Joseph Hugar noting Hugar's concern about avoiding "any written information concerning Dr. Conner which would be discoverable," and suggesting that Defendants report Dr. Connor to the National Practitioner Data Bank ("NPDB"). Compl. ¶¶ 96 & 97. Dr. Woods forwarded the email to others with management and/or administrative responsibilities with Defendants including Dr. Ambrosino, Dr. Morgenstern and Dr. Mitty. Compl. ¶¶ 98 & 99.

On May 28, 2019, SMG sent a certified letter to Dr. Woods terminating his employment effective September 25, 2019. The letter, which was signed by Michael Callum, M.D. (President, SMG), stated, in relevant part:

> I am writing to notify you that SMG hereby exercises its right to terminate your Employment Agreement referenced above pursuant to Section 5.4 thereof. Accordingly, the Employment Agreement shall terminate effective as of September 25, 2019.

3

Def. Brief, Ex. A. On or about June 5, 2019, Dr. Woods admitted in an email to Dr. Ambrosino that "[o]n 1 June 2019 I received my termination letter by registered mail." Def. Brief, Ex. B.

On June 17, 2019, Dr. Woods discussed Dr. Connor's performance and substandard care with Debra Summers ("Ms. Summers"), Director Risk Management, Clinical Operations for Steward, and subsequently sent Steward officials more than one hundred (100) pages of documentation relating to Dr. Connor and the issues Dr. Woods observed at SRMC. Compl. ¶¶ 100-102. Dr. Woods avers that after his call to Ms. Summers, he was verbally attacked and criticized by Dr. Morgenstern. Compl. ¶ 104. On or about July 1, 2019, Dr. Woods informed Ms. Summers that he was the victim of a "hostile workplace" and was suffering "retaliation." Compl. ¶ 107.

On July 18, 2019, Dr. Woods wrote and mailed a hand-written note to Ralph de la Torre, M.D., the Chairman and CEO of Steward, relating to Dr. Conner and the retaliation that Dr. Woods was facing for reporting Dr. Connor. Compl. ¶ 112. Dr. Woods wrote, in relevant part:

> Isn't it ironic that I have done nothing wrong and yet I am the one who is afraid. Afraid of the full retaliation of the corporation which I have tried to protect. All for persisting in bring[ing] forward surgical and administrative misconduct which led directly to preventable death and patient harm.

Compl. ¶ 113.

Dr. Woods worked at SRMC until September 2019. Compl. ¶ 4.

### III. LEGAL STANDARD FOR MOTION TO DISMISS UNDER RULE 12(b)(6)

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of a complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). Under Rule 8 of the Federal Rules of Civil Procedure, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2).

A complaint must be dismissed for failure to state a claim if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. at 678; *see also Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010). Although the plausibility standard "does not impose a probability requirement," *Bell Atlantic Corp. v. Twombly*, 550 U.S. at 556, it does require a pleading to show "more than a sheer possibility that a defendant has acted unlawfully," *Ashcroft v. Iqbal*, 556 U.S. at 678.

A complaint that pleads facts "merely consistent with a defendant's liability ... stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (citation and internal quotation marks omitted). Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Bell Atlantic Corp. v. Twombly*, 550 U.S. at 555. The plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. at 679.

In deciding a motion to dismiss, "[i]n addition to the allegations contained in the pleadings, the Court may also review "matters of public record, exhibits attached to the complaint and items appearing in the record of the case," as well as "undisputably authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Ickes v. Flanagan*, 2008 U.S. Dist. LEXIS 25683 *4-5 (W.D. Pa. Mar. 31, 2008), quoting *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d at 1384-85 n. 2, and *Steinhardt Group Inc. v. Citicorp*, 126 F.3d 144, 145 (3d. Cir 1997).

Under the pleading regime established by *Twombly* and *Iqbal*, a court reviewing the sufficiency of a complaint must take three steps. First, it must "tak[e] note of the elements [the] plaintiff must plead to state a claim." *Ashcroft v. Iqbal*, 556 U.S. at 675. Second, it should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679. *See also Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011) ("Mere restatements of the elements of a claim are not entitled to the assumption of truth." (citation and editorial marks omitted)). Finally, "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *Ashcroft v. Iqbal*, 556 U.S. at 679.

**IV. DISCUSSION**

Dr. Woods consents to the dismissal of Count 2, Retaliation in Violation of Pennsylvania Whistleblower Act, therefore, this Court need only address Dr. Woods' claims at Count 1, Retaliation in Violation of Public Policy, and Count 3, Intentional Infliction of Emotional Distress ("IIED"). Defendants contend that each of the remaining claims is barred by the applicable statute of limitation. Further, Defendants contend that Dr. Woods' IIED claim must be dismissed for failure to state a claim because: (1) Dr. Woods does not allege any physical manifestations of emotional distress; and (2) the alleged wrongful conduct is neither extreme nor outrageous.

    A.    <u>Count 1- Retaliation in Violation of Pennsylvania Whistleblower Act</u>
            <u>Statute of Limitations</u>

Although ordinarily treated as an affirmative defense, failure to comply with the applicable statute of limitations may be raised on a motion to dismiss where it is clear on the face of the complaint that the cause of action is time-barred. *Benak ex rel. Alliance Premiere Growth*

*Fund v. Alliance Capital Mgmt., L.P.*, 435 F.3d 396, 400 n.14 (3d Cir. 2006). *See Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384 n.1 (3d Cir. 1994) (a statute of limitations defense may be the subject of a motion to dismiss if the untimeliness of the claim is apparent on the face of the complaint). "As the Supreme Court has recognized, statutes of limitations are not 'simply technicalities,' but rather, 'fundamental to a well-ordered judicial system.'" *Lipschultz v. Logan Assistance Corporation*, 50 Fed.Appx. 528, 529 (3d Cir. 2002) (citing *Board of Regents v. Tomanio*, 446 U.S. 478, 487,(1980)). Here, Defendants contend that Dr. Woods' remaining claims at Count 1 and Count 3 are barred by the applicable statute of limitations.

At Count 1 of his Complaint, Dr. Woods avers that Defendants terminated his employment "in retaliation for his reporting Defendants' misconduct," which constitutes "a violation of well-established public policy of the Commonwealth of Pennsylvania." Compl. ¶ 142. In limited circumstances, Pennsylvania recognizes a judge-made claim for wrongful termination in violation of public policy. *See McLaughlin v. Gastrointestinal Specialists, Inc*., 750 A.2d 283, 287 (Pa. 2000). The statute of limitations for wrongful discharge actions under Pennsylvania law is two years. *Raleigh v. Westinghouse Elec. Corp.,* 379 Pa. Super. 550 A.2d 1013, 1014 (Pa. Super. 1998), *appeal denied* 563 A.2d 499 (Pa. 1989) (wrongful discharge based on allegations of racial discrimination covered by two (2) year statute of limitation). *See Anderson v. Consolidated Rail Corp.*, 297 F.3d 242, 251 (3d Cir. 2002) (interpreting Pennsylvania law and citing 42 Pa. Cons. Stat. Ann. § 5524 (7)); *also see Titus v. Home Depot*, 2008 U.S. Dist. LEXIS 69111, *11 (E.D. Pa. September 10, 2008) ("Pennsylvania has a two-year statute of limitations on claims of wrongful discharge in violation of the public policy.").

Dr. Woods contends that his claim at Count 1 is not time-barred because this action was filed on September 24, 2021, before the two-year anniversary of the date his employment with

Defendants ended on September 25, 2019. Moreover, Dr. Woods contends that Defendants' argument ignores the continuing violation doctrine. What Dr. Woods fails to address in both his Complaint and his Response to the Motion to Dismiss is the certified letter from SMG dated May 28, 2019. terminating his employment. Def. Brief, Ex. A[2]. Further, Dr. Woods admitted in an email to Dr. Ambrosino on or about June 5, 2019, that "[o]n 1 June 2019 I received my termination letter by registered mail." Def. Brief, Ex. B. Defendants argue, therefore that Dr. Woods' claims did not accrue when his employment effectively ended on September 25, 2019, but accrued, at the latest, on June 1, 2019 when he received the May 28, 2019, letter notifying him that his employment was terminated.

The limitation period is calculated "from the time the cause of action accrued." 42 PA. CONS. STAT. § 5502(a). In other words, "[t]he limitations period begins to run on a cause of action as soon as the right to institute and maintain suit arises." *McCauley v. Owens-Corning Fiberglas Corp.*, 715 A.2d 1125, 1127 (Pa. Super. 1998), *citing Cochran v. GAF Corp.*, 633 A.2d 1195 (Pa. Super. Ct. 1993), *affirmed*, 666 A.2d 245 (Pa. 1995). When an employee alleges that he was wrongfully discharged, his cause of action accrues as of the date he knows or has reason to know the injury which is the basis of the action. *Langan v. P&G*, 2009 U.S. Dist. LEXIS 53957 *7 (M. D. Pa. June 24, 2009)(citing *Kuhn v. Oehme Carrier Corp.*, 255 F. Supp. 2d 458, 467 (E.D. Pa. 2003)).

In *Delaware State College v. Ricks*, 449 U.S. 250 (1980), the Supreme Court held that the statute of limitations began to run at the time of the challenged employment practice, when the employee was denied tenure, not when his terminal contract actually expired a year later,

---

[2] The Court considers such letter an "undisputably authentic document" attached as an exhibit to Defendants' motion to dismiss and, therefore, subject to review by the Court. *See Ickes v. Flanagan*, 2008 U.S. Dist. LEXIS 25683 *4-5 (W.D. Pa. Mar. 31, 2008)

8

specifically stating "[the] proper focus is upon the time of the discriminatory acts, not upon the time at which the consequences of the acts became most painful." *Id.* at 258. Limitation periods in employment termination cases, therefore, "normally commence when the employer's decision is made." *Harris v. Postmaster Gen. of the United States*, 2022 U.S. App. LEXIS 3197 at *4 (3d Cir. February 4, 2022) (quoting *Delaware State College v. Ricks,* 449 U.S. at 261.).

In determining when the limitations period begins in a constructive discharge case, the Supreme Court in *Green v. Brennan*, 578 U.S. 547 (2016) noted that an employee resigns when he gives his employer definite notice of his intent to resign. If an employee gives "two weeks' notice"—telling his employer he intends to leave after two more weeks of employment—the limitations period begins to run on the day he tells his employer, not his last day at work. *Id.* at 564. The Court further stated:

> A notice rule flows directly from this Court's precedent. In *Ricks*, [*supra.*], and *Chardon v. Fernandez*, 454 U. S. 6 [(1981)] the Court explained that an ordinary wrongful-discharge claim accrues—and the limitations period begins to run—when the employer notifies the employee he is fired, not on the last day of his employment. *Ricks*, 449 U. S., at 258-259 . . .; *Chardon*, 454 U. S. at 8 . . . Likewise, here, we hold that a constructive-discharge claim accrues—and the limitations period begins to run—when the employee gives notice of his resignation, not on the effective date of that resignation.

*Id.* at 564.

Here, Dr. Woods admits he received his termination letter signed by signed by SMG President, Michael Callum, M.D., on June 1, 2019. Alleging wrongful termination, Dr. Woods' cause of action accrued as of the date he knew or had reason to know of the injury which was the basis of this action. The limitation period, therefore, began to run when Dr. Woods was notified of his termination on June 1, 2019.

Dr. Woods also directs this Court to an alleged "Per-Diem Agreement" which he contends was offered to him by Defendants on June 3, 2019. The effective date of the agreement

9

was September 26, 2019.  Dr. Woods contends that the agreement was terminated by the Defendants and is another example of retaliation.  Dr. Woods' reference to the per diem agreement is a red herring for two (2) reasons. First, there is no mention of the agreement in his complaint. More importantly, in an email dated September 3, 2019, to Dr. Callum, Dr. Woods unequivocally stated: "I hereby offer my 30-day notice of termination of the Per Diem Agreement of 3 June 2019." Pl. Brief, Ex. B, p. 4.  Dr. Woods' termination of the agreement is not an act of Defendants and has no effect on the statute of limitations issue.

Finally, Dr. Woods attempts to save his claim by relying on the continuing violations doctrine.  The Court finds, however, that Dr. Woods' reliance on the continuing violation doctrine is misplaced.  The continuing violations doctrine creates a "narrow" and "equitable exception to the timely filing requirement." *Tearpock-Martini v. Borough of Shickshinny*, 756 F.3d 232, 236 (3d Cir. 2014) (quoting *Cowell v. Palmer Twp*., 263 F.3d 286, 292 (3d Cir. 2001)) (internal quotation marks omitted). Under the doctrine, "when a defendant's conduct is part of a continuing practice, an action is timely so long as the last act evidencing the continuing practice falls within the limitations period." *Cowell v. Palmer Twp*., 263 F.3d at 292.  That is, "the court will grant relief for the earlier related acts that would otherwise be time barred." *Id.* "To allege a continuing violation, the plaintiff must show that all acts which constitute the claim are part of the same unlawful employment practice and that at least one act falls within the applicable limitations period." *Mandel v. M&Q Packaging Corp*., 706 F.3d 157, 165-166 (3d Cir. 2013), 706 F.3d at 165-66 (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 122 (2002)). The doctrine focuses, however, solely on "continual unlawful acts, not continual ill effects from an original violation." *Weis-Buy Servs., Inc. v. Paglia*, 411 F.3d 415, 423 (3d Cir. 2005) (quoting *Cowell v. Palmer Twp*., 263 F.3d at 293). Only defendants' "affirmative acts" count. *Tearpock-

*Martini v. Borough of Shickshinny*, 756 F.3d at 236 (quoting *Cowell v. Palmer Twp.*, 263 F.3d at 293).

Here, Dr. Woods filed his complaint on September 24, 2021. The "filing period" in this instance is from September 25, 2019 to September 24, 2021. Dr. Woods, however, fails to direct this Court to a single affirmative act of Defendants that occurred within the applicable limitations period. Accordingly, the Court finds that Dr. Woods failed to file his Complaint within the two (2) year statute of limitations period and Count 1 will be dismissed with prejudice.

### A. Count 3- Intentional Infliction of Emotional Distress
### Statute of Limitations/ Failure to State a Claim

Unfortunately, Dr. Woods claim at Count 3 suffers the same fate as Count 1. The statute of limitations for personal injury actions in Pennsylvania is two years. 42 PA. CON. STAT. § 5524. The Court finds that Dr. Woods' claim for IIED occurred at the time of his termination on or about June 1, 2019. Moreover, Dr. Woods directs this Court to no conduct that caused him emotional distress within the applicable limitations period. Count 3, therefore will be dismissed.

Notwithstanding, the Court's finding that the IIED claim must be dismissed on statute of limitations grounds, the Court also finds that Dr. Woods fails to state a claim for IIED under Rule 12(b) of the Federal Rules of Civil Procedure.

An IIED claim requires the following elements: (1) the conduct must be extreme and outrageous, (2) the conduct must be intentional or reckless, (3) the conduct must cause emotional distress, and (4) the emotional distress must be severe. *Hoy v. Angelone*, 691 A.2d 476, 482 (Pa. Super. 1997). It is for the court to determine, in the first instance, whether the actor's conduct can reasonably be regarded as so extreme and outrageous as to permit recovery. *Reimer v. Tien*, 514 A.2d 566, 569 (Pa. Super. 1986). A plaintiff must also allege physical manifestations of the distress. *See Reeves v. Middletown Athletic Ass'n*, 866 A.2d 1115, 1122 (Pa. Super. 2004) ("[A]

11

plaintiff must suffer some type of resulting physical harm due to the defendant's outrageous conduct.").

As an initial matter, this Court finds that Defendants' conduct in this instance was far from "extreme and outrageous." In defining the outrageous conduct requirement, the Pennsylvania Superior Court has stated:

> Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, Outrageous."

*Thompson v. AT&T Corp.*, 371 F. Supp. 2d 661, 683-684 (W.D. Pa. 2005) (quoting *Strickland v. University of Scranton*, 700 A.2d 979, 987 (Pa. Super. 1997).

Defendants' termination of Dr. Woods is simply not conduct that goes "beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." "[I]t is extremely rare to find conduct in the employment context that will rise to the level of outrageousness necessary to provide a basis for recovery for the tort of intentional infliction of emotional distress. In the context of a dismissal, it has been noted that while loss of employment is unfortunate and unquestionably causes hardship, often severe, it is a common event and cannot provide a basis for recovery for intentional infliction of emotional distress." Cox v. Keystone Carbon Co., 861 F.2d 390, 395 (3d Cir. 1988). Moreover, Defendants offered Dr. Woods a per diem contract to begin after the effective date of his termination which Dr. Woods terminated on his own. The remainder of Defendants' alleged conduct amounts to nothing more that annoyances and petty oppressions. *See Thompson v. AT&T Corp.*, 371 F. Supp. 2d 661, 684 (W.D. Pa. 2005) ("The fact that the Plaintiff was ridiculed and sworn at does not equate to outrageousness for the purposes of an intentional infliction of emotional distress

12

cause of action."); *Kazatsky v. King David Memorial Park, Inc*., 527 A.2d 988, 991 (Pa. 1987) ("[L]iability [for IIED] does not extend to mere insults, threats, annoyances, petty oppressions, or other trivialities.").

Accordingly, the Court finds that Dr. Woods has failed to state a claim for intentional infliction of emotional distress and will dismiss the claim. Because Dr. Woods is unable to overcome neither the statute of limitation nor requirement that Defendants' conduct be outrageous, amendment of the Complaint will be futile. Count 3, therefore, will be dismissed with prejudice.

## V.    CONCLUSION

Based on the foregoing, Defendants' motion to dismiss will be granted. This action shall be dismissed with prejudice. An appropriate Order follows

Cercone, J.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **EDWARD L. WOODS, M.D.** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 2:21cv1319 |
| | ) | **Electronic Filing** |
| **SHARON REGIONAL MEDICAL** | ) | |
| **CENTER, SHARON CLINIC** | ) | |
| **COMPANY, LLC, STEWARD SHARON** | ) | |
| **REGIONAL HEALTH SYSTEM, INC.** | ) | |
| doing business as SHARON REGIONAL | ) | |
| MEDICAL CENTER, **STEWARD** | ) | |
| **MEDICAL GROUP, INC.,** and | ) | |
| **STEWARD HEALTH CARE SYSTEM** | ) | |
| **LLC,** | ) | |
| | ) | |
| Defendants. | ) | |

### ORDER OF COURT

AND NOW, this 26th day of July, 2022, upon consideration of the Motion to Dismiss (**ECF No. 25**) filed on behalf of Defendants, Plaintiff's response thereto, and the briefs and appendices filed in support thereof, in accordance with the Memorandum Opinion filed herewith,

IT IS HEREBY ORDERED that the Motion to Dismiss is **GRANTED**. This action is **DISMISSED** with prejudice. The Clerk shall mark this case closed.

                                                                s/ David Stewart Cercone
                                                                David Stewart Cercone
                                                                Senior United States District Judge

cc:    Brian J. McCormick, Jr., Esquire
           Matthew A. Casey, Esquire
           Andrew J. Ruxton, Esquire
           Kurt A. Miller, Esquire
           Seth J. Robbins, Esquire
           Howard M. Cooper. Esquire

           (*Via CM/ECF Electronic Mail*)